IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| JOLENE LOYD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-00188-W-HFS |
| | ) | |
| ACE LOGISTICS,LLC; | ) | |
| ACE NEXT DAY, LLC; and | ) | |
| TLS, LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the court is the motion to dismiss by defendant, Ace Logistics, L.L.C. "Ace Logistics" (doc. 15). Also, before the court is the motion to dismiss by defendant, Ace Nextday, L.L.C. "Ace Nextday" (doc. 17). Defendant, TSL, Ltd. "TSL," has also filed a motion to dismiss (doc. 25). Finally, defendants have jointly filed a supplemental motion to dismiss (doc. 32).

Plaintiff, Jolene Loyd, commenced this action claiming a violation of the Fair Labor Standards Act "FLSA" for failure to pay her overtime compensation. Plaintiff seeks damages, as well as injunctive and declaratory relief. Plaintiff brings suit as a collective action on behalf of other individuals purportedly employed by defendants with similar job duties, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

In support of their motions to dismiss, defendants Ace Logistics and TSL claim that: (1) they are exempt from the requirements of the FLSA; (2) alternatively, even if covered by the FLSA, they are not employers of plaintiff; (3) plaintiff lacks standing to bring an action either for herself or as

a representative in a collective action; and (4) plaintiff's claims are barred, or limited under the good faith defense of 29 U.S.C. § 259. Defendant Ace Nextday does not dispute its role as an employer of plaintiff, but joins Ace Logistics and TSL in claiming that it is exempt from the FLSA requirements, that plaintiff lacks standing to bring the action for herself or on behalf of others, and that plaintiff's claims are barred under the good faith defense.

## **Standard of Review**

In 2007, the Supreme Court implemented a new standard for addressing whether a complaint states a claim upon which relief may be granted. Jones v. Casey's General Stores, 538 F.Supp.2d 1094, 1101 (S.D.Iowa 2008); Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1968 (2007). The Supreme Court held that a viable complaint must now include "enough facts to state a claim to relief that is plausible on its face." Jones, at 1101; quoting, Twombly, at 1974. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level..." Id; quoting, Twombly, at 1965. Rather than imposing a "heightened fact pleading" requirement, the new standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Id; quoting, Twombly, at 1965, 1974.

However, the complaint must still be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Jones, at 1101. When considering a motion to dismiss for failure to state a claim, a court must accept the facts alleged in the complaint as true, even if doubtful. Id. Thus, a well-pled complaint may proceed even if it appears "that recovery is very remote and unlikely." Id; quoting, Twombly, at 1965.

## Analysis

### Collective Action Certification Under the FLSA

Before proceeding further, it would be appropriate to rule on that portion of plaintiff's complaint as it relates to the commencement of this action on behalf of others purportedly similar to plaintiff.[1] The FLSA provides that an action may be maintained "by any ... employee[] for and in behalf of himself ... and other employees similarly situated" to recover damages for the failure to pay overtime. Parker v. Rowland Express, Inc., 492 F.Supp.2d 1159, 1163 (D.Minn. 2007); quoting, 29 U.S.C. § 216(b). Such an action is known as a "collective action" which differs from a class action under Federal Rule of Civil Procedure 23 in which a potential plaintiff's claim is automatically included in the case unless he expressly "opts out" of the class. Parker, at 1163. Whereas in the collective action brought under the FLSA, a potential plaintiff's claim will be included in the collective action *only* if he expressly *opts in* to the action. Id.

Courts may facilitate this opt-in process by "authorizing the named Plaintiffs ... to transmit a notice [of the lawsuit] to potential class members." Id. The power to authorize notice, however, "is to be exercised ... only in 'appropriate cases,' and remains within the discretion of the district court." Id. For a district court to authorize such notice, the named plaintiffs must first show that they are "similarly situated to the employees whom [they] seek[] to represent." Id. Although the FLSA has not defined the term "similarly situated," courts generally follow a two-stage approach when deciding whether the named plaintiffs in an FLSA action are "similarly situated" to other potential plaintiffs. Id, at 1164. The first determination is made at the "notice stage" where the decision

---

[1] Plaintiff seeks, *inter alia*, designation of this action as a collective action on behalf of the proposed members of the FLSA representative action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action. (Complaint: ¶ 23(a)).

whether notice of the action should be given to potential class members is usually based only on the pleadings and any affidavits which have been submitted. Id. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. Id. If "conditional certification" occurs, putative class members are given notice and the opportunity to "opt-in," and the action proceeds as a collective action through discovery. Id. The second determination is typically precipitated by a motion for "decertification" by the defendant, usually filed after discovery is largely complete and the matter is ready for trial. Id. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. Id.

Here, plaintiff seeks "designation of this action as a collective action on behalf of the proposed members of the FLSA representative action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class..." (Complaint: ¶ 23(a)).[2] In a sworn statement, plaintiff avers that she performed essentially the same functions as other delivery and pick-up drivers, neither of whom received overtime pay for hours worked in excess of 40 hours. (Plaintiff's Affidavit: ¶¶ 2, 9).[3] It has been said that this is insufficient, for a plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit. Parker, 492 F.Supp.2d at 1165. In the event that similarly situated persons declined to opt in to the case, certification would have served no purpose, for the case would ultimately involve no one other than the named plaintiff. Id. In this district, however, it is enough to show other "victims" of the same deprivation of income,

---

[2] As stated in her affidavit, this would include all delivery and pick-up drivers working for the defendants who perform essentially the same job functions. (Plaintiff's Affidavit: ¶ 2).

[3] In considering matters outside of the pleadings, the motions to dismiss should be construed as motions for summary judgment.

presumably because it is likely that victims will wish to be made whole. Young v. Cerner Corp., 503 F.Supp.2d 1226, 1229 (W.D.Mo. 2007). Compare, Robinson v. Tyson Foods, Inc., 2008 WL 4878393 (S.D. Iowa).

Defendants have not presented much argument, except to contend that they are not governed by the FLSA which results in a failure on plaintiff's part to state a claim upon which relief could be granted; additionally, defendants argue that plaintiff lacks standing to serve as a representative for a purported class action.[4] Thus, I find that plaintiff's request for designation of this action as a collective action should be granted.

Employer Status

At the outset, defendants TSL and Ace Logistics claim that they did not hire plaintiff, and, therefore, are not employers of plaintiff for FLSA purposes. For the following stated reasons, I agree.

TSL claims that as a professional employee leasing organization it furnishes personnel to be utilized by defendant Ace Next Day in its business operations. (TSL Supporting Suggestions: pg. 1-2). Pursuant to an agreement with Ace Next Day, TSL agreed to furnish personnel and to handle the payroll and workers' compensation insurance for such personnel. (Id: pg. 2). As the parent company of Ace Next Day, defendant Ace Logistics also contends that it did not employ plaintiff, and rejects any imputed status as plaintiff's employer.[5]

The FLSA defines employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee ...." McDonald v. JP Marketing Associates, LLC, 2007 WL

---

[4]Absent such representation I consider it unlikely that additional claimants would survive the bar created by the Corrections Act of June 6, 2008, infra, which probably operates prospectively to cut off new claims for earlier underpayments.

[5]Unlike TSL and Ace Logistics, Ace Next Day does not dispute that it employed plaintiff.

1114159, *4 (D.Minn. Apr. 13, 2007); quoting, 29 U.S.C. § 230(d). Employee is defined as "any individual employed by an employer." Id; quoting, 29 U.S.C. § 203(e)(1). The "employment" terms in the FLSA are to be interpreted broadly. Id. To determine whether an individual or entity is an employer, courts analyze the "economic reality" of the relationship between the parties. Id.[6] The factors to consider include: (1) the degree of control over the manner in which the work is performed; (2) the worker's opportunity for profit or loss depending on his managerial skill; (3) the worker's investment in equipment or materials, or his employment of workers; (4) whether the service rendered requires a special skill; (5) the degree or permanence of the working relationship; and (6) whether the service rendered is an integral part of the employer's business. However, the existence of an employer-employee relationship "depends upon the circumstances of the whole activity." McDonald, at *4; citing, Reich v. Con Agra, Inc., 987 F.2d 1357, 1361 (8th Cir. 1993).

The Eighth Circuit has not yet set out a test to determine whether an entity may be held to be a joint employer under the FLSA. Schubert v. BethesdaHealth Group, Inc., 319 F.Supp.2d 963, 971 (E.D.Mo. 2004).[7] The four factors used to determine whether an entity may be held to be a joint employer under the FLSA are whether the alleged employer: (1) had the power to hire and fire the plaintiff; (2) supervised and controlled plaintiff's work schedules or conditions of employment: (3) determined the rate and method of payment; and (4) maintained plaintiff's employment records. Schubert, at 971.

---

[6][B]ecause the phrase "acting directly or indirectly in the interest of an employer in relation to an employee" taken literally would support liability against any agent or employee with supervisory power over employees, the "economic reality" of the relationship between the alleged employer and employee has guided courts' interpretation. Bowman v. Ameren Corporation, 2005 WL 1702820 * 5 (E.D.Mo. Jul. 20, 2005) (internal citation omitted).

[7]However, several courts have applied a four factor test. Schubert, at 971; citing, Baker v Stone County, Missouri, 41 F.Supp.2d 965, 980 (W.D.Mo. 1999); Catani v. Chiodi, 2001 WL 920025, *6 (D.Minn. Aug. 13, 2001).

Plaintiff states that she "was employed as a driver for the defendants," however, she does not allege which entity hired her. (Complaint: ¶¶ 3, 10). Plaintiff states that her employment ceased on or about February 29, 2008, but there is no indication that she quit or was fired by either TSL or Ace Logistics. (Id: ¶ 10). Likewise, plaintiff is silent as to which entity supervised or controlled her work schedule or conditions of employment. Rather, plaintiff claims that as her employer, TSL is identified as such on her W2s, and that TSL maintains human resource files for the employees and ensures compliance with all federal wage and hour laws. (Plaintiff's Opposing Suggestions: pg. 3-4). Plaintiff also claims that through its website, TSL held itself out as a joint employer with businesses in the trucking industry. (Id: pg. 4). However, TSL states, and plaintiff does not dispute that it is an employee leasing organization. In an advertisement, TSL states that in addition to maintaining employee files and providing payroll administration, it keeps abreast of the trucking industry's compliance issues, labor laws, OSHA and DOT regulations. (Plaintiff's Opposing Suggestions: Exhibit of TSL website). Similarly unavailing is plaintiff's claim that Ace Logistics was her employer, based on a business card provided to her by the Vice President of Ace Logistics, Jerry Webb, and Ace Logistic's ownership of Ace Next Day. (Id). Once again, plaintiff does not allege that Ace Logistics hired or fired her, controlled her work schedule or conditions of employment, or maintained employment records. Thus, plaintiff's allegations that TSL and Ace Logistic were her employers within the meaning of the FLSA are insufficient.[8]

Ace Next Day, on the other hand, expressly admits it employed plaintiff, and plaintiff has averred that she drove vehicles with Ace Next Day printed on the doors. (Plaintiff's Affidavit: ¶

---

[8] Cf., Baker v. Stone County, Mo., 41 F.Supp.2d 965, 980-81 (W.D.Mo. 1999), where, pursuant to statute, the defendant sheriff and defendant county commission had the power to hire and fire deputies and to determine the rate and method of pay; and where the evidence presented showed that the defendants controlled the work schedule and maintained employee records, the court held that defendants were joint employers of the plaintiffs.

6(a)). Consequently, plaintiff's FLSA claim against Ace Next Day remains, but her claim is dismissed as against TSL and Ace Logistics, without prejudice to reconsideration if discovery develops new evidence against these entities. McDonald, at * 5. Because plaintiff's only claim against TSL and Ace Logistics is an FLSA claim that has been dismissed, TSL and Ace Logistics are dismissed from this action. Id.

Exemptions

Although Ace Next Day concedes to an employer-employee relationship with plaintiff, it contends that it is exempt from paying overtime pursuant to the Motor Carrier Act exemption of the FLSA. Under the FLSA employers must pay overtime compensation at a rate of not less than one and one-half the employee's regular compensation rate. Kautsch v. Premier Communications, 502 F.Supp.2d 1007, 1010 (W.D.Mo. 2007); see also, 29 U.S.C. § 207. The FLSA's maximum hour requirement, however, does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." Kautsch, at 1010; see also, 29 U.S.C. § 213(b)(1).

According to 49 U.S.C. § 31502(b), the Secretary of Transportation

> May prescribe requirements for (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation. Kautsch, at 1010.

This exception to the FLSA's applicability is commonly known as the Motor Carrier Act Exemption ("MCA Exemption"). Kautsch, at 1011. The MCA Exemption applies to both "motor carriers" and "motor private carriers." Id. Prior to August 10, 2005, the MCA Exemption applied

if (1) the person transported property by motor vehicle; (2) the person was engaged in interstate commerce; (3) the person was the owner, lessee, or bailee of the property being transported; (4) the property was being transported for sale, lease, rent, or bailment or to further a commercial enterprise; and (5) the person had some effect on the vehicle's "safety of operation." Id.

In its argument in support of dismissal, Ace Next Day contends that as an employee whose qualifications and maximum hours of service are regulated by the Secretary of Transportation, plaintiff is exempted from the overtime pay requirements of the FLSA. According to Ace Next Day, in accepting plaintiff's allegations as true, plaintiff was employed as a delivery driver by Ace Next Day who was, and continues to be engaged in interstate commerce.[9] Thus, Ace Next Day contends that for the relevant period worked, i.e. from May of 2003, thru August 9, 2005, plaintiff was exempted from the overtime pay requirements under the FLSA. I agree.

Plaintiff does not contest the argument set forth by Ace Next Day that for work performed prior to August 10, 2005, she was exempt from receiving overtime pay. That does not end the inquiry, however, for on August 10, 2005, the definition of "motor private carrier" was amended by the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"). Kautsch, at 1011. SAFETEA-LU amended 49 U.S.C. § 13102 by adding the word "commercial" before "motor vehicle." Id. As a result, after August 10, 2005, a "motor private carrier" was defined as "a person ... transporting property by commercial motor vehicle (as defined

---

[9]Ace Next Day also claims that it fits the description of either a "motor carrier" or a "motor private carrier," as defined in 49 U.S.C. § 13102. Plaintiff argues that Ace Next Day's contention in this regard is unclear as to whether plaintiff fits under either description. I agree, for the applicable statute, prior to August 10, 2005, defined a motor carrier as a person providing motor vehicle transportation for compensation. 49 U.S.C. § 13102 (13); Ace Next Day would appear to be the motor carrier. A motor private carrier is distinguishable in that it means a person, other than a motor carrier, transporting property by motor vehicle; this coincides with plaintiff's definition of her job as alleged in her complaint. Clearly, as defined, Ace Next Day cannot be considered as both a motor carrier and a motor private carrier.

in section 31132)." Id; quoting, 49 U.S.C. § 13102(15). Section 31132 defines a "commercial motor vehicle" as:

> a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle:
> (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater;
> (B) is designed or used to transport more than 8 passengers (including the driver for compensation;
> ( C ) is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or
> (D) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103. Kautsch, at 1011-12; citing, 49 U.S.C. § 31132(1).

Ace Next Day contends that by virtue of plaintiff's allegation that she was employed as a delivery driver and that Ace Next Day engaged in interstate commerce, plaintiff admitted that she operated a commercial motor vehicle. Plaintiff counters that, without more, Ace Next Day fails to present any evidence in support of this argument. Plaintiff argues that with the 2005 revision, the MCA exemption did not apply to her because, through her sworn statement, she has presented sufficient evidence that Ace Next Day's vehicles (1) do not have a gross vehicle weight in excess of 10,000 pounds; (2) are not designed or used to transport passengers; and (3) do not transport hazardous materials of any quantity requiring placarding.

In response, Ace Next Day merely repeats its contention that based on the language of the initial MCA exemptions, plaintiff was exempted from the overtime requirements of the FLSA for work performed prior to August 10, 2005. Ace Next Day offers little resistance to plaintiff's claim of overtime payments as it relates to the 2005 revision with the inclusion of "commercial motor vehicle." For instance, Ace Next Day argues that plaintiff's affidavit testimony does not

unequivocally state that absolutely no vehicles have a GVW in excess of 10, 000 pounds, but rather, that "from my observation, the majority of the vehicles..." weighed less than 10,000 pounds. According to Ace Next Day, this translates into an admission by plaintiff that at least some of the vehicles weighed in excess of 10,000 pounds; nonetheless, it is not a persuasive argument.

However, the argument may be moot, for on June 6, 2008, Congress enacted into law the SAFETEA-LU Technical Corrections Act of 2008, P.L. 110-224 ("Technical Corrections Act"). Section 305 of the Technical Corrections Act is labeled "Motor Carrier Transportation Registration," and, it amended paragraphs (14) and (15) of section 13102 by striking "commercial motor vehicle" (as defined in section 31132) and inserting "motor vehicle." Vidinliev v. Carey International, Inc., 2008 WL 4500167 * 5 (N.D.Ga. Oct. 3, 2008). In short, it restored the definition of motor carrier to its pre-SAFETEA-LU state. Id.

In a joint supplemental motion to dismiss, Ace Next Day[10] argues that in addition to amending these provisions, section 121(b)(2) of the Technical Corrections Act provided that the amendments "shall be treated as not being enacted." Ace Next Day contends that this quoted language expresses the intent of Congress to make the Technical Corrections Act amendments retroactive. This would result in a finding that for the period of August 10, 2005, through the present, plaintiff was exempted from receiving overtime pay because the SAFETEA-LU inclusion of "commercial" would not have been effected, thereby maintaining plaintiff's prior exempt status. Ace Next Day also argues that because section 306(a) of the Technical Corrections Act expressly provides that its application as it relates to *covered* employees begins "on the date of enactment," Congress intended that it would apply prospectively, i.e. from June 6, 2008.

---

[10]As previously determined, defendants TLS and Ace Logistics were not employers. Thus, their motions will be granted, and they are dismissed from this action.

Plaintiff does not address the retroactivity argument. Instead, she claims that she was a covered employee for FLSA purposes pursuant to the SAFETEA-LU amendment which added commercial motor vehicle to the definition of a motor private carrier, and pursuant to section 306 of the Technical Corrections Act, she continues to be a covered employee for overtime purposes. A covered employee is defined in section 306( c ) as an individual:

(1) who is employed by a motor carrier or private motor carrier;
(2) whose work, in whole or in part, is defined as:
(A)that of a driver, driver's helper, loader, or mechanic: and
(B) affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles -
(I) designed or used to transport more than 8 passengers (including the driver) for compensation; or
(ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; or
(iii) used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103 of title 49, United States Code; and
(3) who performs duties on motor vehicles weighing 10,000 pounds or less.

According to plaintiff, she was employed as a driver of vehicles weighing 10,000 pounds or less, and she did not transport any passengers or hazardous materials that required placarding. In sum, plaintiff contends that by virtue of the 2005 amendment she was a *covered* employee, and remained so after the 2008 amendment because she meets all of the above factors. While this circuit has not addressed the retroactive effect, if any, of the Technical Corrections Act, I find the reasoning set forth in Vidinliev disfavoring retroactivity to be instructive.

The court in Vidinliev reasoned that if section 305 were to be applied retroactively, then the original definition of motor carrier would apply to all of the plaintiffs' claims, even those occurring after August 10, 2005, resulting in the elimination of any rights the plaintiffs may have had to overtime pay based on the SAFETEA-LU definition of motor carrier. Vidinliev, at * 5. The court

further reasoned that whenever a statute attaches new legal consequences to events completed before its enactment, "our traditional presumption teaches that [the statute] does not govern absent clear congressional intent favoring such a result." Vidinliev, at * 6; quoting, Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994). The standard for finding that Congress unambiguously intended a statute to apply retroactively is demanding, and the cases in which the Supreme Court found truly retroactive effect have involved statutory language that was so clear it could only sustain one interpretation. Id. (quotations and citations omitted).[11]

The Vidinliev court looked next at section 121 of the Technical Corrections Act to determine its applicability. Here, Ace Next Day relies on that provision of section 121 that states that each provision of SAFETEA-LU including the amendments made by SAFETEA-LU which are amended by the Technical Corrections Act "shall be treated as not being enacted." According to Ace Next Day, this provides evidence of the clear and unambiguous intent of Congress in favor of retroactivity. Contrary to Ace Next Day's contention, the Vidinliev court held that section 121 provided for the general rule that the amendments would take effect on June 6, 2008. Vidinliev, at * 6. With the exception that if a provision were an amendment to the SAFETEA-LU, then it would take effect on August 10, 2005. Id. The court determined that contrary to the defendants' argument, a close look at the statute revealed that section 305 was not actually an amendment to the SAFETEA-LU. Id. This determination was gleaned from the language used by Congress in other sections of the Technical Corrections Act that expressly stated that the section was an amendment

---

[11] The court noted that the presumption against retroactivity was reinforced by the principle that exemptions to the Fair Labor Standards Act are "narrowly construed against the employers seeking to assert them." Vidinliev, at * 6; quoting, Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960). Thus, while Congress may have wanted section 305 of the Technical Corrections Act to apply retroactively, it failed to demonstrate that intent in terms so clear and so unambiguous that "it could sustain only one interpretation." Id. (quotations and citation omitted).

to the SAFETEA-LU. Id, at * 7.[12] No such language is used in section 305, and implies that Congress did not consider section 305 as an amendment to SAFETEA-LU. Id.

Finally, *assuming arguendo*, that section 305 could be considered an amendment to the SAFETEA-LU, there is still insufficient evidence that Congress clearly and unambiguously intended for section 305 to apply retroactively. Id. This is illustrated in the language of section 306 which provides a limitation on an employer's liability for a violation of the FLSA. Id. In essence, section 306 provides that, with respect to a covered employee, in the event that a violation of the FLSA occurred in the 1 year period beginning August 10, 2005, and the employer did not, at that time, have actual knowledge that he was subject to the requirements of section 7 of the FLSA, then a limitation was imposed on his liability. Id. The net effect of these subsections is that an innocent employer has a one-year defense against claims for overtime pay brought by employees whose work involves motor vehicles that do not qualify as commercial motor vehicles. Id, at * 8. The Vidinliev court reasoned that if the definition of motor carrier in section 305 applied retroactively, then the one-year defense provided in section 306 would be nothing more than surplusage. Id. To the same effect, see, Veliz v. Cintas Corporation, 2008 WL 4911238 (N.D.Cal. Nov. 13, 2008).

Because Congress did not clearly and unambiguously indicate that section 305 of the Technical Corrections Act should apply retroactively, it takes effect on the date of its enactment, June 6, 2008. Id. This results in a finding that for the period of August 10, 2005, through February 29, 2008, the date upon which plaintiff's employment terminated, plaintiff was a covered employee for overtime purposes pursuant to the FLSA.

Accordingly, it is hereby

---

[12]For example, section 101(a) states that certain paragraphs of the SAFETEA-LU *are amended* by language stricken, and replaced with other language. Vidinliev, at * 7.

ORDERED that the motion of defendant, Ace Logistics, to dismiss (ECF doc. 15) is GRANTED, consistent with this opinion. It is further

ORDERED that the motion of defendant, Ace Next Day, to dismiss (ECF doc. 17) is GRANTED in part and DENIED in part, consistent with this opinion, and preliminary certification as a collective action is GRANTED. It is further

ORDERED that plaintiff file a proposed notice within fourteen days from the date of this order. Defendant, Ace Next Day, shall file its response to plaintiff's proposed notice within fourteen days thereafter, after which time the court will finalize the notice.

ORDERED that the motion of defendant TLS to dismiss (ECF doc. 25) is GRANTED, consistent with this opinion. It is further

ORDERED that the joint supplemental motion to dismiss (ECF doc. 32) is DENIED.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

December  12 , 2008

Kansas City, Missouri